**Antonio GORSIRA, Petitioner,**

v.

**Michael CHERTOFF, Secretary, Department of Homeland Security,[1] and Alberto Gonzales, Attorney General of the United States, Respondents.**

**No. Civil Action No. 3:03cv1184 (SRU).**

United States District Court, D. Connecticut.

April 11, 2005.

---

1. Michael Chertoff succeeded James Loy, who was previously Acting Secretary of the Department of Homeland Security and had been named as a respondent in this proceeding. *See* Fed.R.Civ.P. 25(d)(1).

Michael G. Moore, Law Offices of Maria De Castro Foden, Hartford, CT, for Petitioner.

Douglas P. Morabito, U.S. Attorney's Office, New Haven, CT, for Respondents.

### RULING ON MOTION FOR RECONSIDERATION

UNDERHILL, District Judge.

On February 16, 2005, I granted Antonio Gorsira's petition for a writ of habeas corpus. Because Gorsira—who had been convicted of a narcotics offense—appeared to be ineligible for judicial review of his final removal order under 8 U.S.C. § 1252(a)(2)(C), I held that "when a habeas proceeding provides the only means by which a person can obtain judicial review of a nationality claim, section 1252(b)(5) does not bar consideration of a nationality claim raised in a habeas petition." *Gorsira v. Loy*, 357 F.Supp.2d 453, 457–58 (D.Conn.2005).

The Respondents moved for reconsideration under Local Rule 7(c), arguing that I erred in concluding that Gorsira did not have an alternative forum for judicial review of his nationality claim. They pointed to case law in which the Second Circuit has held that it does have jurisdiction over claims of citizenship despite section 1252(a)(2)(C). *E.g., Brissett v. Ashcroft*, 363 F.3d 130, 133 (2d Cir.2004). I agree that, to the extent my earlier jurisdictional holding was limited to cases in which a petitioner cannot otherwise obtain judicial review of the merits of a nationality claim, it was erroneous. For the reasons set forth below, I now hold that section 1252(b)(5) does not bar a district court from considering nationality claims raised in habeas proceedings despite the availability of an alternative judicial forum in the court of appeals.

### I. Background

Gorsira is a native of Guyana who has been convicted of threatening in the sec-

ond degree and narcotics possession. When he filed his habeas corpus petition, he was being detained by the Bureau of Immigration and Customs Enforcement pending removal based on those convictions. As a result of my order granting the habeas petition, Gorsira has since been released from custody.

In his petition, Gorsira claimed derivative citizenship pursuant to · 8 U.S.C. § 1432(a)(3) (repealed 2000) based on his mother's naturalization. She was· naturalized when Gorsira was seventeen, living in the United States as a permanent resident, and in her sole legal custody. After analyzing former section 1432 and Guyana law on legitimation, I concluded that, despite his ·father's apparent acknowledgment of paternity and Gorsira's stipulation concerning paternity, Gorsira's paternity had never been *established by legitimation* under the laws of Guyana. Accordingly, as a child born out of wedlock whose paternity had not been established by legitimation, Gorsira derived citizenship by operation of law pursuant to the former 8 U.S.C. § 1432(a)(3) when his mother naturalized.

The Respondents have moved for reconsideration of my jurisdictional holding, and rely on 8 U.S.C. § 1252(b)(5) to argue that I should have transferred Gorsira's petition to the Court of Appeals because the petition raised a nationality claim. After reviewing Second Circuit case law and reconsidering the statutes at issue, I hold that I retain jurisdiction over the nationality claim in Gorsira's habeas petition despite section 1252(b)(5), which is applicable only to cases on direct review.

## II. Discussion

The Respondents do not argue that the district court lacks habeas corpus jurisdiction over Gorsira's petition in general. Rather, they argue that the district court is barred from considering his nationality claim.

### A. 8 U.S.C. § 1252(b)(5)—Treatment of Nationality Claims

Gorsira's petition required me to address the effect of 8 U.S.C. § 1252(b)(5) on the jurisdiction of district courts to consider nationality claims in habeas proceedings.

Section 1252(b) prescribes requirements for review of orders of removal:

**(b) Requirements for review of orders of removal.** With respect to review of an order of removal under subsection (a)(1) of this section, the following requirements apply:

(1) Deadline. The petition for review must be filed not later than 30 days after the date of the final order of removal.

(2) Venue and forms. The petition for review shall be filed with the court of appeals for the judicial circuit in which the immigration judge completed the proceedings. The record and briefs do not have to be printed. The court of appeals shall review the proceeding on a typewritten record and on typewritten briefs.

\* \* \*

Section 1252(b)(5) outlines the treatment of nationality claims in such proceedings:

(5) Treatment of nationality claims. (A) Court determination if no issue of fact. If the petitioner claims to be a national of the United States and the court of appeals finds from the pleadings and affidavits that no genuine issue of material fact about the petitioner's nationality is presented, the court shall decide the nationality claim.

(B) Transfer if issue of fact. If the petitioner claims to be a national of the United States and the court of appeals finds that a genuine issue of material fact about the petitioner's nationality is

presented, the court shall transfer the proceeding to the district court of the United States for the judicial district in which the petitioner resides for a new hearing on the nationality claim and a decision on that claim as if an action had been brought in the district court under section 2201 of Title 28.

(C) Limitation on determination. The petitioner may have such nationality claim decided only as provided in this paragraph.

8 U.S.C. § 1252(b). The requirements of section 1252(b)(5) raise the question whether nationality claims can be considered by a district court reviewing a petition for a writ of habeas corpus.

Because the Second Circuit had not yet confronted that question directly, I relied on *Rivera v. Ashcroft,* 394 F.3d 1129 (9th Cir.2005), and *Dragenice v. Ridge,* 389 F.3d 92 (4th Cir.2004), to hold that a district court retains jurisdiction over nationality claims raised in habeas proceedings.[2] The Respondents correctly point out that a portion of my reasoning in support of this holding failed to consider certain case law in the Second Circuit.

### B. *Availability of an Alternative Forum*

Gorsira was convicted of a qualifying offense under 8 U.S.C. § 1227(a)(2)(B) (a controlled substance offense). Pursuant to 8 U.S.C. § 1252(a)(2)(C), the courts are barred from reviewing removal orders against aliens who have committed qualifying offenses. Thus, I noted that Gorsira "appears to be ineligible for judicial review of his final removal order" under 8 U.S.C.

§ 1252(a)(2)(C). *Gorsira,* 357 F.Supp.2d at 457. The Second Circuit has held, however, that it retains jurisdiction to determine the threshold question whether that statutory prohibition applies. *E.g., Santos–Salazar v. United States Dep't of Justice,* 400 F.3d 99, 104 ("section 1252(a)(2)(C) does not deprive the courts of jurisdiction to determine whether the section is applicable, e.g., whether the petitioner is in fact an alien"); *Brissett,* 363 F.3d at 133. As in *Brissett,* the question whether Gorsira is an *alien* whose petition is unreviewable under section 1252(a)(2)(C) merges with the question whether Gorsira is a *citizen* and, thus, not removable. 363 F.3d at 133. Accordingly, Gorsira could have appealed to the Second Circuit the denial of his motion to reopen. The Court of Appeals would have had jurisdiction to consider the threshold question of citizenship.

Gorsira did not appeal the removal order to the Second Circuit. Rather, before the BIA affirmed the IJ's decision, he petitioned this court for a writ of habeas corpus.[3] Although Gorsira had available to him an alternative forum for judicial review of his citizenship claim, the availability of that forum does not preclude this court from exercising jurisdiction over his habeas petition. *See Liu v. I.N.S.,* 293 F.3d 36, 37 (2d Cir.2002) (implicitly holding that an individual is not required to exhaust *appellate* remedies before seeking habeas relief from a removal order). *But see Arloo v. Ashcroft,* 238 F.Supp.2d 381, 382–83 (D.Mass.2003) (citing *Foroglou v. Reno,* 241 F.3d 111, 115 (1st Cir.2001), and holding that petitioner waived his right to

---

**2.** I also noted that in a decision issued last year the Second Circuit did reference an order in which it ruled that a district court lacked jurisdiction to consider the petitioner's nationality claim in a habeas proceeding. *Langhorne v. Ashcroft,* 377 F.3d 175, 177 (2d Cir.2004). The *Langhorne* court cured the jurisdictional problems presented there by

"deeming the petition transferred" from the district court and "construing it as a petition for review under section 1252(b)(5)(A)." *Id.*

**3.** Thereafter, on October 14, 2003, Gorsira's present counsel, Roberto T. Lucheme, first began representing him.

habeas review by failing to exhaust his appellate remedy before the First Circuit Court of Appeals).

The Respondents do not appear to argue, however, that habeas is unavailable to those individuals who fail to appeal to the court of appeals despite the availability of that alternative forum. Rather, they now argue in the alternative that (1) Gorsira's claim is barred due to his failure to timely appeal the initial decision of the IJ, or (2) nationality claims brought in habeas proceedings must be transferred to the court of appeals under section 1252(b)(5).[4]

### C. Transfer to Court of Appeals

■ The Second Circuit has not directly confronted whether the requirements of 8 U.S.C. § 1252(b)(5) apply to petitions for writs of habeas corpus, thereby requiring district courts to transfer habeas petitions to the court of appeals if a claim of nationality is raised. Both the Ninth and Fourth Circuits have held that transfer is not required. *See Rivera*, 394 F.3d 1129, 1129 (district court maintains jurisdiction to consider non-frivolous citizenship claim in habeas proceeding); *Dragenice*, 389 F.3d 92, 100 (4th Cir.2004) (district court maintains jurisdiction over habeas proceeding involving nationality claim despite section 1252(b)(5)).

At least one district court in this circuit has likewise held that it retained jurisdiction to consider nationality claims brought in habeas proceedings. *Lee v. Ashcroft*, 2003 WL 21310247 (E.D.N.Y. May 27, 2003). *But see, e.g., Marquez–Almanzar v. Ashcroft*, 2003 WL 21283418 (S.D.N.Y. June 3, 2003); *Cartagena–Paulino v.*

*Reno*, 2003 WL 21436224 (S.D.N.Y. June 20, 2003).

In *I.N.S. v. St. Cyr*, the Supreme Court considered other subsections of section 1252 that are similar in language and significance to the subsections at issue here. 533 U.S. 289, 312, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001). The Court emphasized that "[i]n the immigration context, 'judicial review' and 'habeas corpus' have historically distinct meanings," and found that in the statutory provisions involving judicial review, Congress did not strip the courts of jurisdiction pursuant to the general habeas statute principally because the statutes did not satisfy the clear statement rule. *Id.* at 311–14, 121 S.Ct. 2271 ("Both sections 1252(a)(1) and (a)(2)(C) speak of 'judicial review'—that is full, nonhabeas review. Neither explicitly mentions habeas, or 28 U.S.C. § 2241. Accordingly neither provision speaks with sufficient clarity to bar jurisdiction pursuant to the general habeas statute.").

Admittedly, in *St. Cyr*, the Supreme Court confronted an issue not present here: the repeal of habeas jurisdiction when it provided the *only* judicial forum for review of a removal order. *Id.* at 314. Specifically, because "collateral review pursuant to 28 U.S.C. § 2241 offered St. Cyr his sole avenue of review, implied repeal of section 2241 would have raised constitutional doubts under the Suspension Clause." *Liu*, 293 F.3d at 40. As noted above, that same concern is not present here.

Nevertheless, in interpreting *St. Cyr*, the Second Circuit has emphasized that

---

4. At the December 20, 2004, hearing, the Respondents disavowed the argument that Gorsira's nationality claim should be transferred to the Second Circuit. When asked whether the nationality claim should be transferred, counsel replied that if the court found a colorable claim of citizenship, it should remand the petition to the Board of Immigration Appeals (BIA) or Immigration Judge (IJ) with instructions to reopen his case. Nevertheless, the Respondents now contend that I should transfer Gorsira's petition to the Court of Appeals because 8 U.S.C. § 1252(b)(5) effectively repeals the district court's jurisdiction over nationality claims brought in habeas proceedings.

the Supreme Court relied foremost on the clear statement rule to hold that "habeas jurisdiction under section 2241 was not repealed by AEDPA and IIRIRA." *Id.* at 39–40, citing *St. Cyr,* 533 U.S. at 314, 121 S.Ct. 2271 ("the *St. Cyr* Court referred repeatedly to the 'forum availability requirement' as *reinforcing* the plain statement rule") (emphasis in original).

*Liu* considered the availability of habeas relief to a non-criminal alien who failed to appeal her removal order to the Court of Appeals although she was not jurisdictionally barred from doing so. *Id.* at 37–38. Its reasoning also applies to an individual like Gorsira, who has been convicted of a crime and who petitions for a writ of habeas corpus without first appealing the removal order to the court of appeals. Despite the availability of an alternative forum to review Gorsira's nationality claim, habeas remains available because section 1252(b)(5) does not speak with sufficient clarity to bar habeas jurisdiction.

■ The question then becomes whether section 1252(b)(5) requires the district court to transfer to the court of appeals any petition for habeas corpus that involves a claim of nationality. I hold that it does not. *See Rivera,* 394 F.3d 1129; *Dragenice,* 389 F.3d 92; *Lee,* 2003 WL 21310247. *Cf. Bagot v. Ashcroft,* 398 F.3d 252, 254 (3rd Cir.2005) (reversing denial of petition for writ of habeas corpus involving citizenship claim and remanding to the district court "with directions to issue a writ of habeas corpus" without discussing any

effect of section 1252(b)(5) on the district court's jurisdiction).

Analysis of the structure and statutory text of 8 U.S.C. § 1252(b) supports the conclusion that section 1252(b)(5) does not require a district court in a habeas proceeding to transfer a nationality claim to the court of appeals. *Lee,* 2003 WL 21310247 at *4. The requirements of review under section 1252(b) include: a filing deadline of thirty days after the date of the final order of removal and venue in the court of appeals for the judicial circuit in which the immigration judge completed the proceedings. 8 U.S.C. §§ 1252(b)(1), 1252(b)(2). These requirements are targeted at direct appeals of removal orders, not at petitions for writs of habeas corpus, which would not be filed with the court of appeals in the first instance, and which are not required to be filed within thirty days of the date of the final order of removal.[5]

Section 1252(b)(5) prescribes the procedure for the review of nationality claims that are raised when a removal order is before a court of appeals on direct review. The statute mandates a transfer to the district court in cases raising genuine issues of fact. 8 U.S.C. § 1252(b)(5)(B). The district court then conducts a hearing on the nationality claim and renders a decision as if the action had been brought in the district court under 28 U.S.C. § 2201. *Id.* The statute does not order the transfer by the district court to the court of appeals of habeas corpus petitions raising claims of citizenship.[6]

---

5. The government has not suggested that section 1252(b)(5) directs a petitioner claiming U.S. citizenship to file his habeas petition in the court of appeals in the first instance. If Congress intended in section 1252(b) to vest courts of appeals with exclusive jurisdiction to consider habeas petitions involving nationality claims, it would be logical for those petitions—like petitions for judicial review of final orders of removal—to be filed there directly.

6. Other subsections of 8 U.S.C. § 1252 do mention habeas corpus. Section 1252(c) requires that a "petition for review *or for habeas corpus* of an order of removal" attach a copy of the removal order and state whether a court has upheld its validity. 8 U.S.C. § 1252(c)(1)-(2) (emphasis added). This language distinguishes petitions for review, i.e., direct appeals, from habeas corpus petitions and supports the conclusion that the proce-

The language of subsection 1252(b)(5)(C) does not negate the conclusion that section 1252(b) is applicable only to cases on direct review. The limitation described in that section refers to "*such* nationality claim[s]," meaning those claims that arise in cases on *direct review before the courts of appeals.* 8 U.S.C. § 1252(b)(5)(C) (emphasis supplied).

It is doubtful that Congress intended to impose the procedural regime required under the Respondents' interpretation of section 1252(b)(5). According to their approach, after determining that I had jurisdiction to consider Gorsira's challenge to the legal conclusions of the IJ and BIA in denying his motion to reopen, I would then transfer all or part of the habeas petition to the Court of Appeals for review of the nationality claim.[7] If there were factual issues, such as which of Gorsira's parents had custody of him at the relevant times, the Court of Appeals would transfer the case back to me, and I would then have jurisdiction to render a declaratory judgment with respect to Gorsira's citizenship. Principles of judicial economy would be offended by such a scheme, particularly when the relevant statutes do not prescribe it.[8]

Finally, I again recognize that the precise question whether nationality claims that are raised in habeas proceedings must be transferred to the court of appeals under section 1252(b)(5) is currently before the Second Circuit in *Lee v. Ashcroft,* Docket Nos. 03–2522, 03–2529. The Respondents have already filed an appeal in this case. If on appeal the Second Circuit rules that I did not in the first instance have jurisdiction over Gorsira's nationality claim and should have transferred it to that court, the Second Circuit will be free to treat the petition as transferred. *See Langhorne,* 377 F.3d at 177. Thus, given its present procedural posture, this case will not get to the Court of Appeals any faster by transfer than by appeal of my decision and order.

### III. Conclusion

Although I acknowledge that an alternative forum for consideration of Gorsira's nationality claim was available in the Court of Appeals, I hold that section 1252(b)(5) does not bar a district court's consideration of a nationality claim raised in a habeas petition. Furthermore, the text of section 1252(b)(5) does not suggest that a transfer to the court of appeals is required or appropriate. Thus, for the reasons set forth above, I adhere to my initial decision that I have jurisdiction to consider Gorsira's petition, although that initial decision was too narrow.

---

dure in section 1252(b)(5) is applicable to direct review but not habeas petitions.

Section 1252(e)(2) also contains the phrase "habeas corpus proceedings," but that reference is limited in scope. 8 U.S.C. § 1252(e)(2). It addresses judicial review available in habeas corpus proceedings brought to challenge determinations under 8 U.S.C. § 1225(b)(1), relating to expedited removals by immigration officers without a hearing.

7. It is unclear whether I would first consider Gorsira's other claim (i.e., that his convictions

were not qualifying offenses), or if because there was a nationality claim involved, I should immediately transfer all or part of the petition to the Court of Appeals.

8. The *Lee* court noted the possible injustice that could arise under such a regime. For instance, in *Lee,* the petition was not filed within the thirty-day deadline mandated by section 1252(b)(1). The Second Circuit has held that "compliance with the time limit for filing a petition to review the BIA's final order is a strict jurisdictional prerequisite." *Malvoisin v. I.N.S.,* 268 F.3d 74, 75 (2d Cir.2001).

The motion for reconsideration (**doc.# 40**) is GRANTED. On reconsideration, the relief requested is DENIED.

It is so ordered.